# United States Court of Appeals
# for the Second Circuit

August Term, 2023

Argued: November 20, 2023
Decided: July 23, 2024

Docket Nos. 23-877(L), 23-878(Con), 23-879(Con), 23-880(Con), 23-881(Con), 23-882(Con), 23-883(Con), 23-884(Con), 23-885(Con)

BETH BACHER, REPRESENTATIVE FOR PAUL BACHER (DECEASED), JEROME JAY BERKOWITZ, MARY CASSIDY, JOHN CORWIN, ARMANDO RAMOS, RAFAEL ROLON, RODERICK SULLIVAN, THOMAS VAZZANO, ANNE YOST, PLAINTIFF REPRESENTATIVE FOR RICHARD YOST (DECEASED), *et al.*,

*Plaintiffs-Appellees,*

v.

BOEHRINGER INGELHEIM PHARMACEUTICALS, INC., BOEHRINGER INGELHEIM CORPORATION, BOEHRINGER INGELHEIM USA CORPORATION, GLAXOSMITHKLINE LLC, GLAXOSMITHKLINE HOLDINGS (AMERICAS), INC., PFIZER, INC., SANOFI-AVENTIS U.S. LLC, SANOFI US SERVICES INC.,

*Defendants-Appellants.*

_____

Before:         KEARSE, CALABRESI, and NATHAN, *Circuit Judges.*

Defendants-Appellants appeal from an order of the United States District Court for the District of Connecticut (Meyer, *J.*) remanding these nine actions to state court. Defendants removed these actions from state court to federal court, arguing that a motion to consolidate filed in state court by Plaintiffs proposed a

1

joint trial sufficient to confer federal subject-matter jurisdiction under the Class Action Fairness Act's "mass action" provision.  Plaintiffs disagree, asserting that their motion proposes consolidation only for pretrial purposes.  We agree with the Plaintiffs, finding the text of their motion ambiguous in isolation but clear in context, and therefore **AFFIRM**.

Judge Kearse dissents in a separate opinion.

_____

DANIEL S. PARISER, Arnold & Porter Kaye Scholer LLP (Anand Agneshwar, Arnold & Porter Kaye Scholer LLP, New York, NY; Joseph W. Martini, Spears Manning & Martini LLC, Southport, CT; Patrick M. Fahey, Jamie A. Welsh, Shipman & Goodwin LLP, Hartford, CT; Lindsey B. Cohan, Dechert LLP, Austin, TX; Robert Reginald Simpson, Lauren R. Greenspoon, Shook, Hardy & Bacon LLP, Hartford, CT; James I. Glasser, James O. Craven, Wiggin and Dana LLP, New Haven, CT, *on the brief*), Washington, D.C., *for Defendants-Appellants*.

JOHN A. BRUEGGER, Parafinczuk Wolf, P.A. (Robert A. Izard, Craig A. Raabe, Izard, Kindall & Raabe, LLP, West Hartford, CT, *on the brief*), Boca Raton, FL *for Plaintiffs-Appellees*.

_____

1    CALABRESI, *Circuit Judge*:

2    Defendants-Appellants appeal from an order of the United States District

3    Court for the District of Connecticut (Meyer, *J.*) remanding these nine actions to

4    state court.

5    The Class Action Fairness Act ("CAFA") is best-known as a landmark

6    expansion of federal subject-matter jurisdiction over class actions.  CAFA also

7    conferred federal subject-matter jurisdiction over "mass actions," or civil actions

8    "in which monetary relief claims of 100 or more persons are proposed to be tried

9    jointly."  28 U.S.C. § 1332(d)(11)(B)(i).  But CAFA is clear that actions consolidated

10   "solely for pretrial purposes" are not considered "mass actions."  *Id.* §

11   1332(d)(11)(B)(ii)(IV).

12   "Federal courts are courts of limited jurisdiction."  *Kokkonen v. Guardian Life*

13   *Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  As a result, the federal statutes controlling

14   our jurisdiction often allow plaintiffs to structure litigation strategically to evade

15   federal subject-matter jurisdiction.  Thus, to avoid federal question jurisdiction,

16   plaintiffs can choose not to bring a federal cause of action; or, to escape invocation

17   of CAFA's mass action provision, plaintiffs can structure their complaints to

18   include 99 plaintiffs rather than 100.

1    In this case, which involves nine virtually identical cases filed in Connecticut

2  state court, Plaintiffs sought to do just this.  They went to great lengths to evade

3  various triggers of federal subject-matter jurisdiction.  Time and again, Plaintiffs

4  walked the edge of one jurisdictional line or another, and each time they sought to

5  avoid missteps that might allow the cases to be brought into federal court.

6    Defendants claim that Plaintiffs made one such misstep—Plaintiffs filed a

7  "motion to consolidate"— which Defendants allege triggered federal jurisdiction

8  by proposing a joint trial, thereby fulfilling a requirement of CAFA's mass action

9  provision.  Accordingly, Defendants removed the case to federal court.  Plaintiffs

10  sought remand.  Conceding that they otherwise met the requirements of CAFA's

11  mass action provision, Plaintiffs argue that they proposed only pretrial

12  consolidation and not a joint trial.  They thus assert that they have not run afoul of

13  CAFA's jurisdictional grant.

14    The district court agreed with the Plaintiffs and ordered remand of these

15  nine actions.  It held (a) that Plaintiffs' motion cited authority that could be used

16  to propose consolidation for either pretrial management or for a joint trial and (b)

17  that, read in the context of Plaintiffs' many attempts to avoid CAFA jurisdiction,

18  the best reading of Plaintiffs' motion was that it proposed only pretrial

1 consolidation.  Defendants timely appealed, arguing that the district court erred

2 in two ways: (1) in considering Plaintiffs intent when intent is not contemplated

3 by the statute and, (2) if intent were to be considered, in its evaluation of the

4 evidence of Plaintiffs' intent.

5 We hold: (1) that the district court correctly understood CAFA as requiring

6 a determination of whether the Plaintiffs *intended* to seek a joint trial—that is,

7 whether a reasonable observer would conclude that Plaintiffs acted with the

8 intention of bringing about a joint trial and (2) that, analyzing the record, the

9 district court correctly concluded that the Plaintiffs sought only pretrial

10 consolidation.  We therefore affirm.

11 **I.** **BACKGROUND**

12 **A. Proceedings in State Court**

13 Between July and October 2022, nine lawsuits were filed in the Connecticut

14 Superior Court for the Judicial District of Danbury.  Each suit asserts virtually

15 indistinguishable state-law personal injury claims stemming from usage of a

16 gastrointestinal medication known as Zantac; each suit was brought by the same

17 firm and against the same eight defendants, companies that have held the right to

18 market over-the-counter Zantac; each suit named three defendants and one

1    Plaintiff domiciled in Connecticut; and each suit contains just fewer than 100

2    plaintiffs, with seven suits containing 99 plaintiffs and the other two containing 80

3    plaintiffs.   In total, these nine suits include claims filed on behalf of 853 Plaintiffs

4    from thirty-six states.

5          Each complaint further contained a clause indicating that every Plaintiff

6    sought an individual judgment against Defendants, preserving the individual

7    nature of their respective claims: "Wherefore, *each* Plaintiff requests that the Court

8    enter an order or judgment against the Defendants." J. App'x 106, 345, 605, 730,

9    862, 986, 1121, 1257 (emphasis added).   And each complaint contained a lengthy,

10   express disclaimer of federal jurisdiction.[1]

---

[1] Each complaint contained the following provision:

> This lawsuit is not subject to removal based on the existence of a federal question. Plaintiffs assert common law and/or statutory claims under state law.   These claims do not arise under the Constitution, laws, or treaties of the United States. 28 U.S.C. § 1447(c).   There is no federal jurisdiction over this matter because all Plaintiffs assert claims against a forum defendant, Boehringer Ingelheim.   One of the Plaintiffs is a citizen of Connecticut as alleged herein.   Defendants are therefore precluded from removing this civil action due to the presence of a forum defendant, Boehringer Ingelheim, with respect to each Plaintiff named herein.   28 U.S.C. § 1441(b)(2) ("A civil action . . . may not be removed if any of the parties properly joined and served as defendants is a citizen of the State in which such action is brought.").

J. App'x 49, 287-288, 423, 547-548, 672-673, 805, 928-929, 1082, 1200.

1    After these nine actions were filed as separate suits in Connecticut state

2    court, Plaintiffs' counsel corresponded with Defense counsel over the Plaintiffs'

3    desire to file motions consolidating these actions and transferring them to the

4    Connecticut Superior Court's specialized Complex Litigation Docket ("CLD").

5    Following a phone call between counsel, Defense counsel wrote the following

6    email to Plaintiffs' counsel:

7          Before I start making my calls, I want to make sure my notes are
8          accurate. Plaintiffs want all cases consolidated in the same court and
9          as far as CLD designation, would like to designate: 1) Hartford, 2)
10        Stamford. If I have that right, I will start making calls today and
11        hopefully get back to you early next week.
12

13  *Id.* at 143. Five days later, Plaintiff's counsel followed up on the "consolidation

14  motions/CLD application" and asked if there had been "[a]ny progress on your

15  end?" *Id.* Defense counsel expressed that the Defendants consented to CLD

16  transfer and were comfortable with Plaintiffs' recommended CLD venues. *Id.* at

17  142. Accordingly, Plaintiffs' counsel responded that they would "prepare the

18  consolidation motion and CLD application." *Id.*

19    After Defense counsel consented to the CLD transfer, Plaintiffs filed a

20  motion to consolidate the nine actions. Plaintiffs' motion requested consolidation

21  "[p]ursuant to Conn. Prac. Book § 9-5." *Id.* at 117. The motion cited no other

authority but did contain a few statements "support[ing]" consolidation:

Specifically, the motion stated that "[c]onsolidating these actions will allow for the

court to *manage* all of them in an orderly and efficient manner" and that "[i]t is

likely that issues raised in any one of the cases could impact the other cases." *Id.*

at 118 (emphasis added).

### B. Proceedings in Federal Court

Before the state court could act on Plaintiffs' motion to consolidate, the

Defendants filed notices of removal for all nine actions, asserting federal subject-

matter jurisdiction under the mass action provision of CAFA. That provision

confers on federal courts subject-matter jurisdiction over "any civil action . . . in

which monetary relief claims of 100 or more persons are *proposed* to be tried jointly

on the ground that the plaintiffs' claims involve common questions of law or fact."

28 U.S.C. § 1332(d)(11)(B)(i) (emphasis added). Plaintiffs do not dispute that the

consolidated actions include the claims of 100 or more persons; nor do they

dispute that the instant actions are civil actions for monetary relief. Instead, the

sole disputed question is whether Plaintiffs' motion to consolidate "proposed" a

joint trial.

1    Defendants argued that the plain text of Plaintiffs' motion proposed a joint

2    trial because of its citation to Section 9-5.  That section provides in relevant part:

3    "Whenever there are two or more separate actions which should be tried together,

4    the judicial authority may, upon the motion of any party or upon its own motion,

5    order that the actions be consolidated for trial."  Conn. Prac. Book § 9-5(a).

6    Eight days after Defendants removed these actions, Plaintiffs sought

7    remand.  They contended that the federal court lacked subject-matter jurisdiction

8    because their motion proposed consolidation only for pretrial management, and

9    CAFA is clear that actions consolidated "solely for pretrial proceedings" are not

10   "mass actions."  28 U.S.C. § 1332(d)(11)(B)(ii)(IV).  Plaintiffs argued that Section 9-

11   5 has been used by Connecticut courts to effectuate transfer both for pretrial

12   management and for trial, and that, as a result, their citation to Section 9-5 did not

13   necessarily propose a joint trial.  Further, Plaintiffs claimed that the context of their

14   motion clearly indicated that the purpose of consolidation was pretrial

15   management in order to avoid paying a transfer fee for each individual action.

16   The district court agreed with the Plaintiffs.  It found that Plaintiffs' citation

17   to Section 9-5 was ambiguous and that the record did not show that Plaintiffs

18   proposed a joint trial:

1      The most natural interpretation of their motion and the context in
2      which it was filed is that they sought consolidation only for purposes
3      of pre-trial case management. . . . [T]he plaintiffs sought consolidation
4      as no more than an expedient for an easier and less costly transfer of
5      the cases to the [CLD] for superior case management.

6

7   *Bacher v. Boehringer Ingelheim Pharms., Inc.*, No. 3:22-CV-01432 (JAM), 2023 WL

8   196053, at *3 (D. Conn. Jan. 17, 2023).  Accordingly, the district court remanded all

9   nine cases to Connecticut state court.  The Defendants timely appealed.

10   **II.**      **Standard of Review**

11      The district court had jurisdiction because "a federal court always has

12   jurisdiction to determine its own jurisdiction."   *LeChase Constr. Servs., LLC v.*

13   *Argonaut Ins. Co.*, 63 F.4th 160, 171 (2d Cir. 2023) (quoting *United States v. Ruiz*, 536

14   U.S. 622, 628 (2002)).

15      We also have jurisdiction.  Usually, an order remanding a removed case to

16   state court is not reviewable on appeal.  *See* 28 U.S.C. § 1447(d).  CAFA provides

17   an exception to that rule.  CAFA authorizes the courts of appeals to review an

18   appeal from a district court's order deciding a motion to remand pursuant to

19   CAFA's jurisdictional provisions.  28 U.S.C. § 1453(c)(1).  The Defendants timely

20   filed an application to appeal, and we therefore have jurisdiction to consider the

21   order of remand.

1    On appeal from the grant or denial of a motion to remand for lack of CAFA-

2    conferred jurisdiction, "we review the court's legal conclusions *de novo* and its

3    factual findings for clear error." *Blockbuster, Inc. v. Galeno*, 472 F.3d 53, 56 (2d Cir.

4    2006) (citing *Briarpatch Ltd. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 302 (2d Cir. 2004)).

5    CAFA, moreover, is no exception to the well-known rule that the party asserting

6    subject-matter jurisdiction has the burden of proving by a preponderance of the

7    evidence that jurisdiction exists. *See Makarova v. United States*, 201 F.3d 110, 113

8    (2d Cir. 2000); *McNutt v. Gen. Motors Acceptance Corp. of Indiana*, 298 U.S. 178, 189

9    (1936) ("[T]he court may demand that the party alleging jurisdiction justify his

10   allegations by a preponderance of evidence."); *c.f. Blockbuster, Inc.*, 472 F.3d at 59.[2]

---

[2] Under CAFA, the burden of demonstrating that remand is warranted "on the basis of one of [CAFA's] enumerated exceptions" shifts to the plaintiffs "once the general requirements of CAFA jurisdiction are established." *Greenwich Fin. Servs. Distressed Mortg. Fund 3 LLC v. Countrywide Fin. Corp.*, 603 F.3d 23, 26 (2d Cir. 2010).

The question in this case, however, is whether the Defendants have met the general requirements of CAFA jurisdiction, not whether the Plaintiffs have proved an exception. The provision of CAFA at hand is not an "exception" to its jurisdiction. Rather, it is a definitional clause. CAFA confers jurisdiction over "mass actions." *See* 28 U.S.C. § 1332(d)(11). The provision in question defines "mass actions" as actions for which a joint trial has been proposed. *Id.* at § 1332(d)(11)(B)(i). Accordingly, an action consolidated only for pretrial purposes does not qualify as a "mass action" that has met CAFA's general requirements. In *Greenwich*, on the other hand, "[plaintiffs] argued . . . that their suit fell within an exception to CAFA jurisdiction for actions 'that relate[ ] to the rights, duties (including fiduciary duties), and obligations relating to or created by or pursuant to any security . . . .'" 603 F.3d at 26 (quoting 28 U.S.C. § 1332(d)(9)(C)). The question in this case, however, is whether Plaintiffs' actions constitute a mass action and, thus, whether they constitute an action covered by the terms of CAFA at all. Accordingly, Defendants, as the party invoking federal jurisdiction, bear the burden of demonstrating that jurisdiction is proper by a preponderance of the evidence.

1    **III.    Discussion**

2    At every turn, Plaintiffs have gone to great lengths to avoid federal

3    jurisdiction.  This is obvious from the structure of their complaints.  Each includes

4    one plaintiff from Connecticut, ensuring that complete diversity between the

5    parties does not exist.  Each falls just shy of the 100-plaintiff federal removal

6    threshold, with seven just a single plaintiff shy, indicating a particularized intent

7    to avoid CAFA's mass action provision.    Each contains a lengthy express

8    disclaimer of federal jurisdiction, and each indicated that the individual plaintiff's

9    claims remained separate.

10   It is, therefore, clear that Plaintiffs originally sought to keep these actions in

11   state court.  Consistent with that desire, there is nonetheless an obvious reason

12   why Plaintiffs might seek consolidation for pretrial management: avoidance of a

13   costly fee.  "Pursuant to Connecticut General Statutes Sec. 52-259, there is a $335.00

14   fee for each case requested" to be transferred to the CLD.  State of Connecticut

15   Judicial Branch, *Facts About the Connecticut Judicial Branch Complex Litigation Docket*,

16   https://www.jud.ct.gov/external/super/FACTS_082123.pdf

17   [https://perma.cc/PB9V-QHV6] (last accessed July 21, 2024).[3]

---

[3] Before the district court, Plaintiffs' counsel explained that they requested consolidation for this
very reason.  J. App'x 195.

1    Consolidation before transfer, thus, would presumably have saved

2    Plaintiffs thousands of dollars in filing fees by allowing them to pay one fee rather

3    than nine. Notably, in discussions with Defense counsel, Plaintiffs' counsel always

4    discussed the two motions—consolidation and transfer to the CLD—in tandem.

5    And when it came time to file motions to consolidate and for transfer, Plaintiffs

6    first filed the motions for consolidation. Plaintiffs' actions are thereby consistent

7    with a desire to consolidate to facilitate the economical transfer of these actions to

8    the CLD. Defendants nevertheless make two broad arguments for reversal.

9    **A.**

10   First, Defendants argue that courts seeking to determine whether a joint trial

11   has been proposed can examine only the plain text of a contested proposal and

12   cannot "look[] beyond the words of Plaintiffs' consolidation request." Appellant's

13   Br. 16. Defendants argue that to require courts to look to Plaintiffs' intent would

14   require an unwieldy inquiry. *Id.* at 15.

15   We disagree and hold that CAFA permits a consideration of Plaintiffs'

16   "intent." The common usage of the word "propose[]," 28 U.S.C.

17   § 1332(d)(11)(B)(i), indicates as much. As the Eleventh Circuit, considering the

18   same argument, explained: "[W]e would hardly say that a mouse 'proposes' to be

13

1  eaten by a cat when it makes the mistake of being seen by the cat, recognizes the

2  danger, and then quickly scurries away." *Scimone v. Carnival Corp.*, 720 F.3d 876,

3  884 (11th Cir. 2013).  Instead, our common understanding is that for one to

4  "propose," that person must intend to make an offer or request.

5      Two other circuits considering whether CAFA requires courts determining

6  if a joint trial has been "proposed" have adopted *Scimone's* reasoning that the

7  "natural reading of the provision is that the plaintiffs must actually want . . . what

8  they are proposing." *Ramirez v. Vintage Pharms., LLC*, 852 F.3d 324, 331-32 (3d Cir.

9  2017) (quoting *Scimone*, 720 F.3d at 884); *see also Parson v. Johnson & Johnson*, 749

10  F.3d 879, 888 (10th Cir. 2014) (same).

11      One circuit has held otherwise.  *Adams v. 3M Co.*, 65 F.4th 802 (6th Cir. 2023).

12  In *Adams*, the Sixth Circuit refused to consider an intent-based argument and held

13  that "[r]equiring district courts to divine counsels' unexpressed intentions" would

14  run afoul of the usual maxim that jurisdictional rules be "simple." *Id.* at 805 (citing

15  *Hertz Corp. v. Friend*, 559 U.S. 77, 95 (2010)).  *Adams* thus conducted its inquiry into

16  whether a joint trial was "proposed" without considering plaintiffs' intent.  *Adams*

17  instead relied on the definition of "proposal" provided in *Black's Law Dictionary*:

18  "Something offered for consideration or acceptance." *Id.* at 804 (citing Black's Law

14

1    Dictionary 854, 1255 (8th ed. 2004)).  Defendants here urge us to adopt *Adams's*

2    logic.  *See* Appellant's Br. 15-16.  We decline to do so.

3        Setting aside that *Adams* ignores common usage (and, as we explain below,

4    legislative history), its logic is flawed on its own terms.  We are unpersuaded by

5    its assumption that a test that is restricted to the text of a document itself is

6    "simpler" than one that reads that text in context.  In this case, for example, we

7    find that looking beyond the face of the Plaintiffs' motion readily clarifies the

8    meaning of the motion, and thus presents us with a "simpler" resolution of the

9    matter at hand.

10       Second, *Adams's* reliance on *Black's Law Dictionary* to avoid considering

11   intent is misguided.  In consulting dictionaries, we should avoid "an uncritical

12   approach," Antonin Scalia & Bryan A. Garner, *A Note on the Use of Dictionaries*, 16

13   Green Bag 2d 419, 420 (2013), and should "use more than one . . . check[ing]

14   editions from the date of enactment as well as current," *id.* at 422 n.14 (*quoting*

15   Michael B.W. Sinclair, *Guide to Statutory Interpretation* 137 (2000)).  *Adams* cites

16   *Black's* definition of the noun "proposal," presumably because *Black's* offers no

17   definition for the verb "propose" or any variation thereof.  But we should not

18   assume that similar words used as different parts of speech have identical

1    meanings.  *Cf. FCC v. AT&T Inc.*, 562 U.S. 397, 402-03 (2011) (noting that different

2    parts of speech sharing a root word "may have meanings as disparate as any two

3    unrelated words").

4        Moreover, though *Black's* definition of the word "proposal" does not

5    mention "intent," it does contemplate an action with an intended result:

6    "Something offered *for consideration or acceptance*."  Other dictionaries that do

7    provide definitions of "propose" similarly describe an action with an intended

8    result, usually consideration of a plan, and thereby make the intent element

9    explicit.  *Parson* and *Scimone* turn to Merriam-Webster publications with just such

10    definitions.  *Parson* cites *Merriam-Webster's Online Dictionary*, as in effect in March

11    2014, for its definition of "propose" as "to suggest (something, such as a plan or

12    theory) to a person or group of people to consider" or "to plan or intend to do

13    (something)."  *Parson*, 749 F.3d at 888 (citing Merriam-Webster Online Dictionary).

14    *Scimone* cites *Webster's Third New International Dictionary* (2002) for a similar

15    definition of "propose."  *Scimone*, 720 F.3d at 881.[4]  We are therefore satisfied that,

16    to the extent dictionaries are helpful, they in fact further confirm that to "propose"

---

[4] Merriam-Webster Online has since changed its definition and currently defines "propose" or "proposed" as "to form or put forward a plan or intention."  *Proposed*, Merriam-Webster Online Dictionary, http://www.merriam-webster.com/dictionary/proposed [https://perma.cc/DF7P-7BY6] (visited January 29, 2024)).

1    something requires an intent to do so.

2    CAFA's legislative history corroborates our analysis.  The Senate Report

3    accompanying CAFA describes the mass action provision as covering "any civil

4    action in which 100 or more named parties *seek* to try their claims for monetary

5    relief together."  S. Rep. No. 109–14, at 44 (2005) (emphasis added).  This is

6    significant evidence that CAFA's authors did not intend CAFA's jurisdictional

7    grant to spring into swift operation when triggered by the use of a magic word or

8    citation.  It indicates that CAFA's authors meant to confer federal subject-matter

9    jurisdiction only when a court determines that plaintiffs acted with the intention

10   of seeking a joint trial.

11   Legislative history, common usage, and the dictionaries hence all row

12   together.  Each affirms our conclusion that courts evaluating whether a plaintiff

13   proposed a joint trial must center their analysis on whether it was the plaintiffs'

14   intention to request such a trial.

15   **B.**

16   Second, Defendants forcefully argue that, even if Plaintiffs' intent is

17   relevant, the plain text of Plaintiffs' motion itself evinces the intent to consolidate

18   for trial, and that evidence from outside the motion cannot overcome the text of

1    the motion itself.  They contend that Plaintiffs' citation to Section 9-5 constitutes

2    an "express proposal" for a joint trial because a party's citation to Section 9-5 can

3    only mean that they seek a joint trial.  Appellant's Br. 12.  We disagree and find the

4    text of the motion, read in context, consistent with Plaintiffs' desire to consolidate

5    for pretrial purposes only.

6        Defendants' argument relies on the text of Section 9-5 itself, which twice

7    refers to trials: "Whenever there are two or more separate actions which should be

8    tried together, the judicial authority may, upon the motion of any party or upon

9    its own motion, order that the actions be consolidated for trial."  Conn. Prac. Book

10   § 9-5(a).  Plaintiffs, however, contend that local Connecticut practice regarding

11   Section 9-5 does not in fact rely on the trial component.  They argue that

12   Connecticut courts have used Section 9-5 to effectuate consolidation for pretrial

13   purposes, trial purposes, or both, and thus that their citation to Section 9-5 does

14   not clearly propose a joint trial.

15       Plaintiffs point to several cases as examples of Connecticut's practice of

16   using Section 9-5 for pretrial consolidation.  The most significant of these is *DiBella*

17   *v. Town of Greenwich*, No. X08-CV-09-5012500-S, 2012 WL 2899242 (Conn. Super.

18   Ct. May 22, 2012).  In *DiBella*, a case that had already been transferred to the CLD,

1    the court consolidated two cases for pretrial management. *Id.* at *2. In so doing, it

2    stated that "[a] motion to consolidate is governed by Practice Book § 9-5(a)." *Id.* at

3    *1. Two sentences later, however, the court describes itself as retaining "inherent

4    power to consolidate different causes . . . when the circumstances authorize such

5    course." *Id.* (quoting *Rode v. Adley Express Co., Inc.*, 33 A.2d 329, 331 (Conn. 1943)).

6         Because *DiBella* asserts that the court possesses consolidation authority both

7    pursuant to Section 9-5 and its "inherent power" to consolidate, it is not clear

8    which authority the court relied upon. Alternatively, the court may have referred

9    to its "inherent power" merely as support for the preceding statement that "[t]he

10   question of whether two actions ought to be consolidated is addressed to the

11   discretion of the trial court." *Id.* In any event, *DiBella* cannot clearly be read either,

12   as Defendants contend, to rely on "inherent power" to the exclusion of Section 9-

13   5; or, as Plaintiffs contend, to rely on Section 9-5 to the exclusion of the "inherent

14   power."[5]

---

[5]   *DiBella* is one of a long line of decisions by Connecticut courts that cite Section 9-5 (or its predecessor, Section 84A) as governing consolidation, without separating trial consolidation from pretrial consolidation, but also reference the inherent power of the courts to manage actions. *See, e.g.*, *Clarke v. Ochart*, No. 68018, 1993 WL 119765, at *1 (Conn. Super. Ct. Apr. 13, 1993); *Nautilus Ins. Co. v. Baldino*, No. CV-02-0388855, 2002 WL 1952618, at *1 (Conn. Super. Ct. July 24, 2002); *Mut. Life Ins. v. Town of Westport*, No. CV-93 030 38 81, 1993 WL 407950, at *2 (Conn. Super. Ct. Sept. 30, 1993); *Pellecchia v. Connecticut Light & Power Co.*, No. HHD-X04-CV-08-6003273-S, 2009 WL 4069271, at *2 (Conn. Super. Ct. Oct. 28, 2009); *Mills v. Rita H. Carter Revocable Tr.*, No. CV126015038, 2013 WL 1110914, at *2 (Conn. Super. Ct. Feb. 19, 2013). The standard practice

1    There are, however, cases in which Connecticut state courts do cite Section

2    9-5 as allowing for consolidation "only . . . for purposes of trial." *Feinstein v.*

3    *Keenan*, No. FSTCV106007235S, 2012 WL 2548274, at *2 n.3 (Conn. Super. Ct. June

4    6, 2012); *see also Chieffalo v. Hoffman-Olson*, No. FSTCV085007415S, 2010 WL

5    1052270, at *2 (Conn. Super. Ct. Feb. 22, 2010).   On the other hand, one recent

6    decision by the United States District Court for the District of Connecticut noted

7    that two Connecticut state court cases "indicate that some Connecticut trial courts

8    have interpreted [Section] 9-5 to allow consolidation for some or even all pre-trial

9    purposes." *Caprio v. Gorawara*, 2019 WL 13222943, at *2 n.1 (D. Conn. 2019), *adhered*

10   *to in relevant part on reconsideration*, 2019 WL 6463684 (D. Conn. Dec. 2, 2019) (citing

11   *Post v. Brennan*, 2008 WL 2967094, at *1 (Conn. Super. Ct. July 16, 2008), and *Groth*

12   *v. Redmond*, 194 A.2d 531, 532 (Conn. Super. Ct. 1962)).

13   Defendants assert that *Caprio* mistakenly interpreted *Post* and *Groth*.   They

14   also argue that *Caprio* is not an authoritative source for interpreting Connecticut

15   law because it is unpublished.   But ultimately the question is not what the correct

16   understanding of Connecticut law is.   Rather, it is what, given these cases, we can

---

among Connecticut courts has been to cite Section 9-5 alongside a reference to the inherent power of the courts before discussing whether the actions present enough common questions to warrant consolidation.

1    understand Plaintiffs' citation to Section 9-5 to mean. Accordingly, even if reading

2    Section 9-5 and its surrounding caselaw as allowing the provision's usage for

3    pretrial consolidation is not the best reading of the provision—indeed, even if it is

4    ultimately a mistaken reading[6]—given the convoluted history of Section 9-5's

5    application, we cannot say that a party's citation to Section 9-5 provides clear

6    evidence of that party's intent to propose a joint trial.[7]

7        In the final analysis, we cannot agree that the text of Plaintiffs' motion

8    constitutes a plain declaration of their intent to seek a joint trial. To the contrary,

9    when Plaintiffs' citation to Section 9-5 is read alongside their explanation in the

10   motion that "[c]onsolidating these actions will allow for the court to *manage* all of

11   them in an orderly and efficient manner," J. App'x 118 (emphasis added), and their

---

[6] To understand what the Plaintiffs meant, it is important to understand the state of the law, but it is not important to understand whether the *DiBella* or *Caprio* courts were right or wrong. For that reason, certifying the question of Section 9-5's best interpretation to the Connecticut Supreme Court would be futile. Clarification of Section 9-5's proper uses would not tell us anything about what Plaintiffs meant in citing Section 9-5 at a time when the law was unclear.

[7] Defendants further argue that if Plaintiffs in fact sought only pretrial consolidation, they could have cited an "ordinary joinder" provision of the Connecticut practice book to effectuate consolidation instead of Section 9-5. As a result, Defendants say, Plaintiffs' decision to cite Section 9-5 is significant indicia of their intent. We agree that Plaintiffs' counsel could have drafted their motion more clearly. But we do not make much of the availability of other joinder provisions. Simply put, though there were other joinder provisions that Plaintiffs could have used, those provisions do not speak specifically to consolidation for only pretrial purposes. *See* Conn. Prac. Book §§ 9-3, 9-4. Given the confused law of Section 9-5, Plaintiffs could reasonably have believed that Section 9-5 fulfilled their purpose of seeking joinder for management purposes only.

1 consistent desire to avoid federal jurisdiction, it seems clear to us that Plaintiffs'

2 motion sought to propose only pretrial consolidation.

**CONCLUSION**

4       Defendants have not met their burden to demonstrate that federal

5 jurisdiction exists.  Accordingly, we **AFFIRM** the judgment of the district court.